3   151
5   418

DONOVAN, PLAINTIFF IN ERROR, v. GATHE, DEFENDANT
IN ERROR.

STATUTE OF FRAUDS.

A sale of chattels unaccompanied by an immediate delivery, and an actual, open and unequivocal change of possession, exclusive of the vendor, is void as against creditors.

*Error to the County Court of Phillips County.*

Mr. W. T. ROGERS, for plaintiff in error.

No appearance for defendant in error.

BISSELL, J., delivered the opinion of the court.

By the sale of some chattels Joshua Stone became, in the winter of 1889, a creditor of Mrs. E. M. Freeman, who lived in Holyoke, Colorado.  This debt afterwards became the property of the plaintiff in error, James Donovan, who brought this suit to recover it, and sued out a writ of attachment to

aid in its collection. For some months prior to the time the writ was served, Mrs. Freeman had been the owner and keeper of what was called " The Star Meat Market " in the village where she lived. From early in October, 1889, down to the time of the alleged sale on the 4th of February, C. E. Gathe was in her employ, working about the market. Early in February Mrs. Freeman seems to have become somewhat embarrassed, and on the fourth day of that month executed to Gathe what purported to be a bill of sale of the market and its contents. On the 6th, two days later, Donovan instituted suit against Mrs. Freeman, sued out his writ, and levied on part of the contents of the shop to satisfy his claim. Gathe filed what purported to be an affidavit under the justice's act to assert his title to the property. The claim of this intervenor was resisted by Donovan upon two grounds; first, that the paper which he filed in court did not comply with the requirements of the statute relating to interventions in justices' courts; and, second, because there was no such visible and notorious change of possession of the property transferred to Gathe as would vest him with the title against existing creditors or innocent purchasers. In reality these are the only two questions presented in the case. The testimony concerning these matters can scarcely be said even to be conflicting. What has been antecedently stated is not denied, and what the case shows on the subject of the transfer of possession is about equally well established. In respect of this last matter the record shows that Mrs. Freeman lived in the rear of the shop which was used as a meat market. Prior to February 4th she was the declared and ostensible owner of the property, and probably for the major part of the time was in the market engaged in selling meats, taking the money paid therefor, and looking after the business generally, aided and assisted solely by the intervenor Gathe. From the date of the alleged sale on the 4th of February to the time of the levy of the writ, there was, so far as the world was concerned, no change either in the apparent possession, or the exercise of the apparent rights of ownership.

According to the testimony of Gathe, the intervenor, " after February 4, 1890, she was in the shop the same as before, selling meat and taking in money, but she was at work for me. There was nothing done, only I told several parties I bought her out.   Did not put up any new sign or take down any; there was none there only ' The Star Meat Market.'   I was going to put notice in the paper, but did not have time. Was closed up February 6, 1890, and opened up again February 10, 1890.   Then I went and had some bills printed. A few days after that I put them up in the shop."   Mrs. Freeman, the alleged vendor, gave the same testimony.   One of the defendant's witnesses had a conversation with Mrs. Freeman the day following the sale, and to him she stated, when asked whether she had sold out, " They say I have," and after repeating this remark several times finally said, " I sold out to that man."   There was no testimony whatever offered by the intervenor, nor is there any contained in the record which in any manner tends to show that after the transaction between Mrs. Freeman and Gathe anything was done to notify the world of the change of ownership, or that there was any alteration in the possession of the property. On this evidence judgment was entered for the intervenor, the property was released from the attachment, and the attaching creditor brings error.

That the sale was void under our statute of frauds as against creditors or *bona fide* purchasers for value is not open to question.   The statute has been repeatedly construed, and it is universally held that to make a sale valid as against creditors or purchasers the transfer of possession must be complete, and the purchaser's control of the property must be open and notorious, and such as to advise the world of the change in the title.   It has been said : " the vendee must take the actual possession, and the possession must be open, notorious and unequivocal, such as to apprise the community, or those who are accustomed to deal with the party, that the goods have changed hands, and that the title has passed out of the seller and into the purchaser.   This must be determined by

the vendee using the usual marks or *indicia* of ownership and occupying that relation to the thing sold which owners of property generally sustain to their own property. The possession must be exclusive of the vendor. A concurrent or joint possession is not admissible." *Cook v. Mann*, 6 Colo. 21 ; *Wilcox et al. v. Jackson*, 7 Colo. 521 ; *Bassinger v. Spangler*, 9 Colo. 175 ; *Atchison v. Graham*, 14 Colo. 217.

Weighed and considered in the light of the principle declared in these cases, the evidence did not justify a finding in favor of the intervenor. There was no attempt to alter the apparent relation of the parties, or to change the possession and control of the property. If the question of good faith were permitted to enter into the determination of the question, very grave doubts would arise whether the transaction was a legitimate transfer of property, or was an attempt to hinder creditors in the collection of their just claims against the original proprietor. Whatever may have been the motive, the transaction cannot stand as against the attaching creditor.

It was somewhat seriously contended in argument that the court erred in treating the paper filed by the intervenor as an affidavit under the statute entitling him to be heard in the assertion of his claim of title. There is a good deal of doubt whether the affidavit was in the prescribed form. The affiant failed to point out, or specify, or describe, the property to which he claimed title, and there was nothing in it which could be considered to be even a substantial compliance with this statutory requisite. It is unnecessary to determine whether it might be held sufficient after judgment to uphold the recovery, since on the main question presented the finding is against the intervenor and he can never recover under his evidence.

For the error committed by the court in adjudging the title to be in the intervenor as against the attaching creditor, this judgment must be reversed.

*Reversed.*