Thomson, J.,
delivered the opinion of the court.
Williams & Wood brought their action before a justice of the peace against E. McIntosh to recover $211.58 for goods sold and delivered. A writ of attachment was issued in the case and levied upon a stock of goods as the property of McIntosh. L. W. Lloyd intervened, claiming the goods as his *158 property. Judgment was rendered against McIntosh for the debt, and against the intervenorupon his affidavit of intervention. The intervenor appealed to the county court, where judgment again went against him, and he brings the case here by appeal.
It appears from the evidence that on November 3, 1892, Lloyd was the owner and proprietor of a grocery store at No. 2704 Champa street, Denver, and that on that day he sold the entire stock and business to McIntosh, taking in payment his unsecured note, payable on demand, for $1,910. Two or three days after this, McIntosh paid him $300 on the note. After the sale the business was conducted bj" McIntosh until May 16, 1893, when he resold the goods and business to Lloyd. During the time McIntosh conducted the business, Lloyd was in his employ at a salary of $50.00 per month, taking orders and delivering goods for him, and making'purchases in his behalf. In the course of Lloyd’s employment he several times purchased goods for McIntosh from Williams & Wood, the plaintiffs. The consideration of the sale from McIntosh to Lloyd was the return to the former of the note which he had given. No inventory of the stock was taken, the signs upon the store remained the same as they had been, and nothing was done to indicate to the public that a change of possession had taken place. The sale was consummated between four and five o’clock of the afternoon of May 16th, and the writ of attachment was levied at eleven o’clock the next morning. McIntosh left the store when he received his note, remarking “ the goods are yours,” and did not return. When the officer came with the writ, Lloyd informed him that he was the owner of the goods, and showed him the'bill of sale.
The only question in the case is, was there such an immediate delivery! followed by such actual and continued possession of the things sold, as to satisfy the requirements of the statute of frauds ? Unless there was, the sale was absolutely void as against the creditors of the vendor and subsequent purchasers in good faith. Where articles sold are taken by *159 the purchaser and removed to another locality, and there remain in his exclusive custody, the question is not attended with any difficulty. The acts of possession are definite, and explain themselves. But where, as in this case, there is no removal of the goods, and they remain in all respects exactly as they were, the fact of the transfer must be made apparent in some other way. In applying the statute to a case of this kind, Chief Justice Elbert said: “The vendee must take the actual possession, and the possession must be open, notorious and unequivocal, and such as to apprise the community, or those who are accustomed to deal with the party, that the goods have changed hands, and that the title has passed out of the seller and into the purchaser. This must be determined by the vendee using the usual marks or indicia of ownership, and occupying that relation to the thing sold which owners of property generally sustain to their own property.” Cook v. Mann, 6 Colo. 21.
In the case at bar, when the attachment was levied, there was nothing about the store, or upon the premises, from which any person could infer that McIntosh was not still the owner. Nothing had been done to advise the public, or persons dealing there, that the property had changed hands. No inventory was taken, and the goods were left in the same position which they had formerly occupied. The signs that were upon the store building while McIntosh was proprietor were untouched, and no new sign was displayed. It is true that McIntosh was not there on the morning of the 17th, and that Lloyd was there; but Lloyd had been there before ; during the whole time of the proprietorship of McIntosh, Lloyd was acting for him in the business as his employee and agent; and it is fair to assume that McIntosh had not been there himself constantly. The presence of Lloyd and the absence of McIntosh on that occasion are both matters, which, in themselves, were entirely without significance. It is also true that Lloyd told the officer that he was the owner, and showed him the bill of sale; but a mere bill of sale is no compliance with the law, and “ the statute does not permit the transaction to *160 rest upon the declarations of the parties.” Bassinger v. Spangler, 9 Colo. 175; Sweeney v. Coe, 12 Colo. 485. Even if the plaintiffs before commencing their suit had full knowledge of the transaction, the situation would not be altered. They would only have known of a sale which was void as to them. Perrin v. Reed, 35 Vt. 2.
This sale may have been made in good faith. There is nothing in the evidence to indicate that it was not; but the statute is peremptory in its terms,-and whether there was fraud in factor not, the transaction was of no avail as against the plaintiffs. The judgment will be affirmed.

Affirmed.